May it please the Court, I'm Theron Hall and I represent Mr. Yellow. The main issue here is whether or not there was jurisdiction for the District Court to revoke the supervisor release for Mr. Yellow. What happened is this Court vacated the original judgment, vacated it and remanded it with instructions regarding the length of supervisor release. And the petition to revoke supervisor release had been issued before this Court had vacated the original sentence. And so when this case was remanded to the District Court, there was already a petition to revoke. And the District Court revoked the term of supervisor release, even though the original sentence had been vacated. Well, but I'm trying to make sense out of the original three-judge panel order. And the way that I read that order, it looks to me like the only portion that was vacated was supervised release. Well, Your Honor. I mean, is it your position that at that point the District Court loses all jurisdiction over the person of the defendant? I'm not saying it loses all jurisdiction. What happened is the original sentence was vacated. Well, a part of the original sentence was vacated. We didn't vacate the original sentence of conviction and incarceration, did we? Well, it wasn't affirmed either. It didn't – the order didn't say we affirmed. Why can't we just treat that as a limited remand to go back to reopen the judgment in order to address the supervised release issue? Well, Your Honor, I believe this Court is very specific when they make their orders. And usually the affirm part, the reverse part, or affirm the whole thing, or do the opposite. Are you familiar with it? Counsel, are you familiar with the concept of a limited remand? I am familiar with that. But in this case, they didn't do the limited remand. They vacated the sentence. We vacated the supervised release portion, but we didn't vacate the judgment of conviction, did we? Well, the actual order says it's vacated. Well, that's what I asked you. Help me with the order. Well, if we go, I believe it's number – Could your client have just gone to Zanzibar and stayed? I'm sorry. I didn't hear that, Judge. Could your client have just gone to Zanzibar? I'm sorry. I couldn't hear it. Gone to another country. Zanzibar is sort of a stand-in. You say he was under no judgment of conviction at that point. Could he have just left the country and never come back without penalty just because we remanded on the supervised release? Well, that's a good question. I don't know. The answer is I don't know. Well, I thought about it all weekend. I'm glad I came up with a good question. What's your good answer? Well, what it was, it was vacated. I think it would be anybody else whose case was vacated. Are they free to leave? Probably not, but it was vacated. Well, why not? If your position is right, either he was still under some constraints or he was not. If he was not, he would have been free to leave and wouldn't have been a fugitive or anything else. He was – right? Actually, I don't think he was free to leave because he was vacated and it was remanded for resentencing. So there was an order that he appear at the district court. So he wasn't free to leave. But if your position is correct and he went to Zanzibar, the district court couldn't do anything at that point, could it? Well, he would still be under the order of the court to appear at the district court because it was remanded for resentencing. But the order doesn't say anything. It doesn't give him a date by which he has to appear before the district court in order to address the purpose of the remand. It just says we're remanding for resentencing on the length of supervised release. So with regard to Judge Kaczynski's question, what could the district court do at that point if he, as apparently the record suggests, is in the wind? I guess this issue would apply to everybody whose case is – whose judgment is vacated. But in this particular case, it was vacated. Don't you think that's kind of an odd result? I mean we go through a trial. We convict someone. We impose a sentence on them. And then they take an appeal, and the appellate court sends it back to the district court. And your position, if I understand your argument, is if we do anything other than affirm it, the district court suddenly loses jurisdiction over the body of the defendant. And he goes to Zanzibar, and there's not a darn thing anybody can do about it. Is that the logical conclusion of your argument? Well, that's not my argument. My argument is he was still under – What is your argument? My argument is that when the judgment was vacated, it was remanded, so he still had to appear to district court to be resentenced. So there was still – he was still under jurisdiction to appear, but the judgment itself, the sentence, was vacated. And until he was resentenced, he was not under the term of supervised release. That's what our argument is. But let's say that he was in prison. And if I take your argument out to that extreme, then that would mean that they'd have to spring him out of prison, right? He wasn't in prison. Beg your pardon? He was not in prison. I know he wasn't. But I'm saying hypothetically, if you take your argument out, and if he happened to have been in prison, under your argument, he would have had to have been taken out of prison until the court resentenced him. And that can't be. Well, if a judgment is vacated, in this particular case, he was remanded to be resentenced, so there would still be reason to keep him in custody because he was going to be resentenced. But if it's vacated by this court, and that's the final say, then he would be released. But in this case, it wouldn't be because there would be a judgment to appear again in district court to be sentenced. Do you want to save some time for rebuttal? We're going to be addressing the fugitive disentitlement issue with the government. You might want to reply to that. You might want to. I didn't think you'd want to speak on it right now, but maybe you'd want to respond to the government on that issue. Do you advise the remaining time for that? I would suggest, yeah. That's a hint, counsel. Take the hint. Okay. Thank you. May it please the Court, my name is Carla Hodes-Delor, representing the government. I'd first like to begin with the fugitive disentitlement doctrine. The government still reasserts its position that this case should be dismissed based on the fugitive disentitlement doctrine. Is the defendant in custody? No. How do we know? How do we know? Because based on the most recent, when this Court issued its order to show cause as to why this appeal should be dismissed under the fugitive disentitlement doctrine, we got in contact with the marshals. I'm sorry. Are you testifying now? I'm not testifying, but I'm saying as an officer. Would you like me to put you under oath? No, I'm not testifying. Well, how do I know that, in fact, you did the things you claim or the people who told you these things were telling the truth? Did you submit an affidavit? I did not submit an affidavit, but as an officer of the Court, I am just telling the Court. You made the phone call yourself? I spoke with the other assistant U.S. attorney who's been working on this case. You're not going to testify as an officer of the Court. You're going to assert facts that were told to you by somebody else. I'm stating as an officer of the Court, I received the marshals' investigative report. Do we have that? I do not. I did not. I have it. I did not submit it to the Court because it's an ongoing investigation. And it's our ---- Well, why be so coy? I mean, you've got an ongoing investigation. It isn't exactly a red-hot investigation, it looks like. I mean, there's been inquiry made according to the representations made. But when the Court comes back specifically and wants no information on that, why be so coy about your response? I did not believe I was being coy with the response. I was summarizing what the marshals had done and that they had traveled to Utah and New Mexico and Arizona, spoken with family and neighbors. Beyond that, the investigative report ---- You don't tell us in your statement. I mean, you don't have an affidavit. You don't explain how you have this information. You just sort of state it as a fact. How do we know? In the footnote, I stated that I wasn't submitting the ---- Do you have it in front of you? I'm sorry? Do you have it in front of you? Let me get it. And apart from ---- So I stated in the letter brief, in footnote 1, I said ---- Excuse me. I apologize. I am ---- It's footnote 2. I stated because this is an ongoing investigation for a fugitive, the government has summarized the marshals' efforts to locate the defendant rather than disclose the investigative reports. You don't say when you say the marshals' efforts. This is the first I've heard that there was a report. You don't tell us whether you talked to somebody or whether you talked to somebody, talked to the government. How do we know these facts? How do we know that ---- What if somebody along the line is misstated or lied or misremembered? How do we prove these facts? Well, I ---- Who do we hold responsible? I'm sorry? Who do we hold responsible if somewhere along the way somebody has misstated the facts? Well, I ---- Because as I'm stating, as like I said, as I'm stating, an officer of the court relying on the marshals' investigative reports, I guess then I would be the one held responsible. Okay. This is ---- Where in your ---- Where in your plaining do you refer to the investigative report? Well, in the footnote, I'm saying I didn't disclose the investigative report. But earlier, I just ---- I stated what the marshals had done. I guess in the body of the brief, maybe I should have said pursuant to an investigative report. But I clarified that in footnote two, why there was just a summary and why I wasn't disclosing the whole thing. Explain why you don't submit the report. It doesn't say that this is based on the report or this is not based on something else. Well, then that was my ---- Well, I know. It is yours. That is my oversight in not stating that in the brief. But I can't tell the court ---- Well, why don't you explain to us now exactly what you did, what it is that you can state of your own knowledge. Okay. On my own knowledge, after ---- And as an officer of the court, so we'll treat it as if it were under oath, right? I have two main points to make. After the court submitted its letter brief, I spoke with the other assistant U.S. attorney who was working on the case with me on this case. Okay. So you're not going to tell us what this other lawyer said? No. What he did was, because he was the one who's handled all this case down below, he's been the assistant U.S. attorney who handled all the case below. He's been the one in contact with the marshals. He got re-initiated contact with the marshals to follow up what's going on. The marshals went out and ---- No, no. Wait a minute. You're now telling us something that somebody else told you. No, no. Now you are into a narrative about the marshals going out. Were you there to observe the marshals going out? No. What I'm saying is it ---- Well, no, I'm asking you just ---- I was not there to ---- So how do you know what the marshals did? Because they submitted a report to myself and the other assistant U.S. attorney detailing their efforts they have made to locate the defendant. After I submitted my letter brief to the court, this is the second point I'd like to make, I personally called the probation officer who's been handling this case and spoke with him and asked him if he has been in contact with the defendant, has the defendant tried to make contact with him, what is the status? And he told me, the probation officer told me, this was on the phone on August 4th. I spoke with him last week. So you're now telling us what the probation officer told us. Yes, when I spoke to the probation officer. What if the probation officer is mistaken or was confused? He can be cross-examined, right? Nobody ---- So this is just hearsay from somebody who is not an officer of the court. Correct. But, I mean, he's ---- I'm not going to, if it's something that's not reliable and not hearsay, the fact that he's saying I haven't had contact with the defendant, the defendant hasn't contacted with me, I'm not going to sit here and then not put forth ---- No, no. I'm sure that you're telling us what you think you heard. Well, I guess in hindsight ---- The question is how do we hold the declarant responsible? Let's say he made a mistake or he lied to you. It's possible. People do lie. People do make mistakes. Well, then it would be up to, in hindsight, I guess I should ---- In hindsight? Right. How long have you been practicing law? This is, you know, you're trying to establish facts in a court of law. Right. You do it by a brief without any attribution, without any explanation. I mean, there was an objection from the other side that this is a hearsay issue and that they can't cross-examine. You don't bother to respond to it. How about putting in a declaration detailing where you got the information? At least that would be ---- But you don't say anything about having reviewed the report? You don't say anything about who you talked to? Correct. So ---- So how do we establish these facts? Very sloppy. Okay. Well, I guess I was under the misimpression that being an officer of the court, I wouldn't be putting forth false information to the court, but I should have done a declaration. But it's up to the court's choosing whether or not they want to go ahead and dismiss the case based on the fugitive disentitlement doctrine. The government's position still is that they should. And if the court requires an affidavit, when I return back to my office, I'm more than happy to submit an affidavit. I just didn't want to submit ---- I think it would be helpful to you to put in a declaration or an affidavit. You know the difference, by the way? I'm ---- I went to law school much longer ago than you. One is before a notary. The other one is just stated on the penalty of perjury. I'll let you figure out which one is which. Okay. But we need facts. We can't just do it on vague statements in a brief. I mean, you don't give us a chain of how you got the information. What is it, just to follow up on Judge Pearsall's question, what's so secretive about this? Well ---- Why can't we see a copy of the report? I don't want to give anything away, but to turn over the report, it details ---- Well, generically, what do I say? Now is the time. Excuse me? I think if you're going to give anything away, now is the time. Well, no, but the report details some of the investigative techniques they're following to catch, to reassert the defendant. And they don't want that disclosed in case that's then communicated to a family member who communicates it to the defendant who then keeps ---- Ms. Dillard, is there any reason why you couldn't file it ex parte with the Court? I could file it in camera or ex parte with the Court, along with either an affidavit or a declaration, whatever the Court seems sufficient. But apart from that, if this Court were to bypass the fugitive, I see them running out of time. If the Court were to still address the merits, the government's contention is that the district court did have jurisdiction to revoke the supervised release in this matter. Okay.  All right. Thank you. The government has clearly failed to make a showing that Mr. Yellow has fled or hidden himself from the jurisdiction of this Court. So where's your client? Well, unfortunately, Arizona Rules of Professional Conduct, Rule 1.6, prohibit me from making that disclosure. I have to invoke the rule or the privilege. So are you assisting in aiding and abetting a fugitive from justice by refusing to confirm or deny that you have any contact with your client? Not according to the Arizona Rules of Professional Conduct. And what do the rules say? Well, if I can bring that up. I mean, I find it very curious that as an officer of the Court, you are unable to tell us whether or not you have any contact at all with your client. Actually, there's an ethical opinion, Arizona State Bar, that says or suggests you cannot do that. And I actually called you. Can we draw an adverse inference from the fact that you won't answer my question? You can draw any inference you want. But the Arizona Bar does not actually. But is there any case law that says I can't? Well, what the rule says is that there's a final order from this Court after I've invoked the privilege under 1.6, then it's discretionary for the lawyer to disclose that or not. And I did contact the ethics panel of the Arizona State Board in preparation for this argument in that regards before I prepared the brief, the letter brief. And so they told you that you cannot answer the Court's question as to whether or not you are in contact with your client? They told me that I have to invoke the privilege, and then if there's a final order, then it's discretionary if I respond or not. You know, I get the same feeling as I do with the government. You're sitting here telling us it's something that somebody else told you. You said you have an opinion? Yeah, there's actually one ethics opinion that I refer to, if I can give you that number. And then you talked to them and they gave you advice? That's true. And they told you that you may not answer the question of whether you are in contact with your client? Initially, unless there's a final order by this Court. I'd like a yes or no. Yes, that's true. You asked us specifically, may you answer whether or not you're in contact with your client, and they said you may not answer unless we give you a final order to do so. That's what I was advised by the attorney I spoke with, who gave me legal advice in that regards through the ethics panel. I'm sorry, who is this? This is somebody from the ethics panel? That's correct. I contacted the ethics panel of the Arizona State Bar. Is this in writing? It's not in writing. What I'm informing you now is if there's a final order, then it's my discretion that I believe, according to the rules, that I can respond or not respond if there's a final order. I don't understand this notion of final order. If the Court issues an order to show cause why this appeal should not be dismissed because your client is a fugitive. I'll read you the rule. What more of an order do you need? Do I need to put you under oath and ask you the question and have you invoke the attorney-client privilege? No. What do you mean by final order? Well, Rule 1.6 of Arizona, which I have to abide by since I'm an attorney in Arizona, states that a lawyer shall not reveal information relating to the representation of the client unless the client gives informed consent. The disclosure is impliedly authorized in order to carry out the representation of or the disclosure is permitted or required by paragraphs B, C, or D. If you go down to paragraph D, it says a lawyer may reveal such information relating to the representation of a client to the extent the lawyer reasonably believes necessary. And then subsection 5 says to comply with other law or a final order of a court or tribunal of competent jurisdiction directing the lawyer to disclose such information. So if there's an original order, I have to, as an attorney, invoke the privilege under Rule 1.6 not to respond. And then if there is a final order after I invoke that privilege, then it becomes the lawyer may reveal such information. It's discretionary. So if we repeat the order right now in open court, which essentially is confirming the written order that we previously issued, ordering you to show cause, and we ask you to answer the question, do you or do you not have contact with your client, isn't that a final order? It is, and I could respond if you do make that final order. Okay. Consider yourself awarded. So you're requesting a final order? I have not had recent contact with my client. But at the same time, I don't believe my client has my phone number or address  Fair enough. Of course, even if you had had contact with him, that wouldn't mean he's not a fugitive. That's true. There has to be a showing by the government that he has purposely hit himself or fled, and the government has not made that showing. In fact, in Gonzales, the facts are even very similar. I think we do understand that. I mean, if you had had contact with your client, that would, if you still told us you did, it might have cut in his favor. But I'm not sure we can draw much of an inference from the fact that you haven't had contact with him. It would have helped if you'd stayed in touch with his client, but I'm not sure there's much else. Yeah. Do you have anything to say about the government's showing? Yes, I do. Assuming they come up with a declaration detailing more or less what opposing counsel has represented. Well, Judge, don't you think it's a little late for them to be coming up with this information? No. At the old argument? So I've answered your question. Now you answer my question. Okay. I would object to timeliness. Also, I requested that report specifically. We've already ruled it's timely, so go ahead and answer the question. Okay. I mean, I'm giving you a chance now. You're staying there. You've heard what they're going to say. If you want to say something on your client's behalf addressing what I think the government will come up with once they come up with a declaration, this is your chance to do so. If you don't want to answer, if you don't have anything to say that's helpful to your client, then you can sit down. So you can object to all you want, but I'm just giving you a chance to help your client by making an argument. Regardless. Anything you want to say? Yes, I do. I don't think they've made a showing. And I'd be curious to see what they have in the report since I requested that report directly. Well, let's assume that the report says your client did not, was released, and he didn't contact the probation officer as he was instructed to do and never has. Let's say they say that. And then they say, we know there's been a bench warrant issue. You don't dispute that. You can't. That's a fact on the record. And they will represent, let's say, by a declaration that they have sent marshals out, deputy marshals out to try to locate your client. And they've spoken to his family and neighbors in Utah, New Mexico, and Tuba City, Arizona. Let's say they put that in a declaration. We have those facts. Anything you can say to that? There's still not a showing. Why is that not enough? Well, who did they talk to? When did they talk to these people? There's really nothing to show that he has fled or has gone from the jurisdiction of this court. Even though it's now been months since anyone has heard from? In Gonzales, it was a year. Well, we're almost up to a year now. Yeah, we're almost up to a year. And in Gonzales, they actually disclosed the names of the people that were contacted. They disclosed the dates. They knew the location where they went to talk to the people. And there still wasn't a showing. And so in this case, even if they do find this information, if you compare it with Gonzales, there still would not be a showing based on what the government has done. Thank you. If we get a declaration from the government, you don't expect to file a counter-declaration, right? Well, I'd like to respond to anything they say, and I would like to have the right due process and confrontational rights to try to corroborate or to disprove the allegations made. So you'd like a chance to put in evidence? Oh, I mean, yeah, I'm curious to see. Well, I'm not sure if I would need to do evidence or not. I really don't know what they're going to say. I know what they've alleged they're going to say, but I'd like to see who, when, where, and have the chance to confront and cross-examine. I'm looking at Gonzales. Gonzales, there were no marshals sent out. There was just a probation officer looking for him, and he had moved, right? Well, in Gonzales, the probation officer went out, went to the apartment where his girlfriend leased the apartment. They talked to the apartment manager because the defendant wasn't there. The apartment manager said, yes, he lives there, and they also, I believe, talked to the girlfriend's daughter at the apartment there. And then they also learned later on that he had moved to another location. And so in Gonzales, it's the same type of thing here. Someone didn't obey the terms of probation. Gonzales was under supervision, and he had reported to the probation officer. At one point, he moves and isn't heard from, right? Well, he never reported. I'm sorry? In Gonzales, he never reported to probation, never complied with any of the terms, just facts very similar to Yellow. There was a failure to report, failure to comply with the terms, and there was no finding, no showing by the government that Gonzales had actually fled or hidden himself. But isn't the difference there all we had was the probation officer filing a violation report and the issuance of a bench warrant? There's no indication in the Gonzales opinion that the marshals even looked for this guy. Well, that might be, but at least there was some type of governmental entity, this one by the court, to go out there to try to find him. Well, yeah, but if the marshals have actively looked for this person in all the places that he is known to haunt and he's not there and his friends and family have no idea where he is, what more does the government have to show to convince the court that he is a fugitive and that we should invoke our discretion to dismiss based on the fugitive disentitlement doctrine? Well, the question is, what have the marshals done? How do we know what they've gone to where? You're not answering my question. Assume that they have done all the things that Ms. Delord represented as an officer of the court they have done and assume that she can file an appropriate declaration to prove all that. Is your position still that that's not enough to permit us to conclude that he is absconded from the jurisdiction and is therefore a fugitive at large? Assuming that they've gone to talk to all the family members they can find, places where he's lived, former employers, they've run his name through all different types of criminal databases, MVD databases, other type FBI databases and done everything they can, then I think there probably would be a showing. So that would be sufficient? In my opinion, there probably would. But in this case, they haven't done that. Okay. They haven't made that showing. Okay. Thank you. Thank you. Cajun Sager will be submitted. We'll allow the government five days to file a declaration if it so chooses. And you may respond if you wish. Thank you, Your Honor. Okay. On second thought, we'll defer submission until we get the papers. We'll submit the case later. I didn't hear. We are deferring submission. Instead of submitting it and having a briefing, we'll defer submission until we have further materials from the parties. Okay? All right. We'll hear the next case on the calendar, United States v. Limas Rodriguez.
judges: Piersol, Kozinski, Tallman